UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUNAE VILLAVASO** | **CIVIL ACTION** |
| **VERSUS** | **NO.** |
| **THE CITY OF NEW ORLEANS** | **SECTION** |

## COMPLAINT

NOW COMES Complainant, Sunae Villavaso, who asserts the following claims for relief:

### Parties

1.

Sunae Villavaso is a person of the full age of majority domiciled in the State of Louisiana, Parish of Orleans.

2.

Defendant, the City of New Orleans, is a political subdivision and municipality organized and existing under the laws of the State of Louisiana, with the capacity to sue and be sued. At all times material hereto, the City of New Orleans was the employer of Villavaso.

### Jurisdiction and Venue

3.

Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C § 1331 and 31 U.S.C § 1367 as this matter arises under federal law, including the False Claims Act, 31 U.S.C. § 3729, *et seq.*, and under Louisiana state law.

1

4.

Venue is proper in this Honorable Court in part pursuant to 28 U.S.C §1391 as a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Louisiana.

**Factual Background**

5.

The American Rescue Plan Act ("ARPA") is a federal fiscal recovery aid for state and local governments to mitigate the fiscal effects stemming from the COVID-19 public health emergency.

6.

ARPA was signed into law on March 11, 2021, disbursing $1.9 trillion of relief and support directly to state and local governments.

7.

Some $386,000,000.00 in federal ARPA funds were disbursed to the City of New Orleans.

8.

The City of New Orleans allocated $11,000,000.00 in ARPA funds to the City's Office of Workforce Development.

9.

At all times material to this suit, Career Coaches employed by the City's Office of Workforce Development were paid by the City of New Orleans based on hours reported by the employee on timesheets certified as accurate by the employee and transmitted to the City by email – that is, by wire within the meaning of 18 U.S.C. § 1343 – using instrumentalities of interstate commerce and transmitting writings and representations in interstate commerce.

10.

At all times material to this suit, the City of New Orleans paid its employees by direct bank deposit – that is, by wire within the meaning of 18 U.S.C. § 1343 – using instrumentalities of interstate commerce and transmitting funds in interstate commerce.

11.

At all times material to this suit, Villavaso was employed by the City of New Orleans as Director of the City's Office of Workforce Development.

12.

During her employment by the City, Villavaso discovered instances of payroll fraud and the misuse and misallocation of ARPA funds by City employees.

13.

Villavaso sought to stop and remedy instances of payroll fraud and the misuse and misallocation of ARPA funds by reporting such illegal conduct to numerous City employees and officials, including Mayor Latoya Cantrell.

14.

On April 25, 2023, Villavaso appeared before the New Orleans City Council and explained how the ARPA funds would be allocated; namely that ARPA funds would be allocated in accordance with the provisions of the Good Jobs Challenge promulgated by the Unted States Department of Commerce.

15.

Villavaso later learned that Director of Administration and Planning for the City of New Orleans, Courtney Story, was ignoring the protocol for the disbursement of ARPA funds and

3

instead was directing ARPA funds to recipients selected by Story alone. Among these recipients was Undue Medical Debt, LLC.

16.

Villavaso reported and complained about the misuse of ARPA funds and about Story's conduct to numerous City officials, including directly to Mayor Cantrell during a three-hour meeting at Mayor Cantrell's house on January 21, 2024.

17.

At the conclusion of the January 21, 2024 meeting, Mayor Cantrell informed Villavaso that Story would be fired.

18.

At a January 23, 2024 meeting attended by CAO Gilbert Mantano, Villavaso, Story, and others, Story stated that Villavaso should be removed from any involvement in the allocation of ARPA funds.

19.

The next day, January 24, 2024, Mayor Cantrell informed Villavaso that Story would not be fired because CAO Montano needed Story to remain employed by the City.

20.

Ultimately, Story left her position at the City and was hired by a beneficiary of her ARPA funding decisions, Undue Medical Debt, where Story is now the Vice President of Government Initiatives.

21.

On March 4, 2024, Villavaso attended a meeting with CAO Montano, Christina Hamilton (Deputy CAO of Human Resources), and Tyra Brown (Director of Housing Policy and Community Development). Montano and Hamilton informed Villavaso that she was effectively being demoted and that Brown would be Villavaso's supervisor with immediate authority over Villavaso's employment. Montano told Villavaso that she "needs to be managed."

22.

On May 19, 2024, Villavaso sent an email to Mayor Cantrell complaining about the ongoing illegal and improper use of ARPA funds.

23.

On May 24, 2024, Villavaso was summoned to Mayor Cantrell's office to meet the Mayor and Chief of Staff Clifton Davis regarding Villavaso's May 19, 2024 email. Mayor Cantrell and Davis were very annoyed that Villavaso sent the email. Mayor Cantrell continuously stated throughout the meeting "that was for me baby," meaning that Villavaso's email was meant to implicate Mayor Cantrell in the misuse of ARPA funds. Both Mayor Cantrell and Davis objected strenuously to Villavaso's putting her complaints in writing. Mayor Cantrell remarked that Villavaso's act of putting her complaints in writing meant that "maybe Ms. Villavaso needs to find her happiness elsewhere."

24.

During the Summer of 2024, Villavaso learned of possible payroll fraud by certain career coaches in the Office of Workforce Development.

25.

In particular, Villavaso discovered that one career coach was pursuing an internship at the same time she was supposed to be working for the City. The employee submitted time sheets falsely reflecting work for the City that she did not do but for which she was paid by the City.

26.

In January 2025, Villavaso discovered that the Business Strategies Manager, who was paid in part by ARPA funds, committed payroll fraud by falsely claiming that she attended – and was paid for attending – the Louisiana Wind Energy Week Conference hosted by Greater New Orleans, Inc.

27.

After Villavaso received confirmation by the hosting authority, GNO, Inc., she wrote up the employee for payroll fraud as well as other concerns.

28.

Villavaso duly reported the instances of payroll fraud to her supervisor, Tyra Brown, and recommended that the employees be fired.

29.

Although Brown confirmed the payroll fraud that Villavaso complained of, Brown dismissed Villavaso's write-up and refused to fire the employees guilty of payroll fraud.

30.

Mayor Cantrell and other City employees dismissed all of Villavaso's attempts to address and remedy the unlawful conduct, acts, and practices, of which Villavaso complained.

31.

Instead, The City of New Orleans terminated Villavaso's employment effective April 18, 2025.

32.

The City of New Orleans fired Villavaso in retaliation for her objections to and attempts to remedy The City's false claims and illegal acts and practices.

### Count I.    Retaliation – Federal Law.

33.

Villavaso re-avers and re-alleges the preceding allegations of this Complaint.

34.

At all times material hereto, Villavaso was an employee of the City of New Orleans entitled to protection from retaliation by the City of New Orleans and those acting on its behalf pursuant to 31 U.S.C. § 3730(h).

35.

Villavaso reported to the City's officers and employees, both verbally and in writing, the foregoing false claims and unlawful conduct by the City and its officers and employees.

36.

As set forth, the City of New Orleans discharged Villavaso because of her lawful acts in investigating, reporting, and attempting to remedy and stop, the false claims and unlawful conduct by the City of New Orleans and its officers and employees.

37.

Villavaso is therefore entitled to all damages and other relief pursuant to 31 U.S.C. § 3730(h)(2), or other applicable law.

## Count II. Retaliation – Louisiana Law.

38.

Villavaso re-avers and re-alleges the preceding allegations of this Complaint.

39.

At all times material hereto, Villavaso was an employee of the City of New Orleans entitled to protection from retaliation and reprisal by the City of New Orleans and those acting on its behalf pursuant to La. R.S. 23:967.

40.

Villavaso reported to the City's officers and employees, both verbally and in writing, her objection to and refusal to participate in the above-described acts and practices done in violation of law.

41.

As set forth, the City of New Orleans discharged Villavaso because of her objection to and refusal to participate in the above-described acts and practices done in violation of law.

42.

Villavaso is therefore entitled to all damages and other relief pursuant to La. R.S. 23:967.

## Jury Demand

43.

Villavaso demands a trial by jury for all claims and issues so triable.

## Prayer for Relief

**WHEREFORE,** Complainant, Sunae Villavaso, prays that this Complaint be deemed good and sufficient and that after due proceedings are had, judgment be rendered in her favor and against the City of New Orleans for the following damages and relief:

A. All general and special damages suffered by Villavaso caused the City of New Orleans's retaliatory discharge of Villavaso, including damages for emotional and mental anguish, outrage, anxiety, depression, humiliation, embarrassment, and loss of enjoyment of life;.

B. Reinstatement of employment or front pay in lieu thereof, including wages and benefits;

C. Two times the amount of back pay, including wages and all benefits, and including interest on all back pay;

D. Punitive damages and exemplary damages;

E. All costs and attorney's fees incurred in the prosecution of this matter;

F. Judicial interest, including interest on costs, to the full extent allowed by law;

G. All general and equitable relief that this Court deems to be just and proper under the circumstances.

Respectfully submitted:

/s/ Kearney S. Loughlin
KEARNEY S. LOUGHLIN
La. State Bar No. 26391
6030 Prytania Street
New Orleans, Louisiana 70118
Telephone:   (504) 891-3193
Facsimile:   (504) 891-3195

And by

NANAK S. RAI
La. State Bar No. 22852
3800 Nashville Avenue
New Orleans Louisiana   70125
Telephone:	(504) 866-5275
Facsimile:	(504) 861-4032
**Attorneys for Sunae Villavaso**